May it please the court, Kenneth Triano, good morning, on behalf of Ms. Ponce, the appellant. Thank you. I'd like to start with the issue that the court directed us to pay closer attention to, and that was whether this was an amendment regarding the inconsistencies in Count 8 and Count 9 between the indictment and the jury instruction. And I think that this case is much like the Howard v. Daggett case in that it permitted the jury on Count 9 to convict Ms. Ponce for bringing in or transporting Mr. Lopez, even though Mr. Lopez was not named as one of the material witnesses in Counts 8 or 9. And because of that, the jury was able to convict on something that had not been passed on by the grand jury. How do we square Howard v. Daggett with U.S. v. Von Stoll, which seems similar because it involves the charge remained the same, but the person, the name of the person identified in the indictment was proven to be someone else at trial? Well, that one I found a little difficult myself. The court in Von Stoll seems to find that the fact that the name of the victim was not something that had to be charged in the indictment as being decisive in that case and did not find the problem, I suppose, with the variance in the actual evidence presented, so that there would have been no harm, no foul, maybe, they were looking at from that perspective. But I think that ties in with this case, because in Alliant's court- There does seem to be sufficient evidence that Ms. Ponce's agents transported at least two aliens, Martinez-Rosas and Lopez-Hernandez, within the United States. Why does it really matter whether it's the wrong name? Well, because there was evidence- I mean, she's not really convicted of something that she didn't do. It's just, you know, I don't know. Apparently, the jury asked to look at the names, and I don't know if they decided, you know, all those names sound alike, whether it's Lopez-Hernandez, Lopez this or- I don't think the jury actually asked to do that. They asked for the indictment and were promised the indictment. They deliberated for two and a half hours. They got the indictment 15 minutes before they issued their verdict. I think that they probably already had their verdict pretty much decided at that point, based on the way I see this case. Alien smuggling cases, though, it's important to distinguish that you do have to name the alien in each case because it's an essential element, and a person can be convicted and punished for each successive alien. So is that how you would distinguish Fonsto? I would, and I think this is a stronger case based on that issue alone than Howard v. Daggett. Let me ask you a question that I also want to ask the government, and it's a strange question, I think. Why does this make any difference in this case? Let's assume for purposes of argument, and you don't want to-I know you have arguments to the contrary, that we affirm the convictions on counts one through eight. Does count nine, did it add to the sentence? I don't think it did. We don't know, and that's the problem. I think that this case went past defense counsel quite rapidly and without virtually any objection or attention. But you're here months and months later. The judge didn't-the judge's sentence was a single sentence. I have, and I've worked on another case with the same judge in which there were multiple counts, and each count had a sentence, and it was structured concurrently, consecutively. In this case, the record and the judgment does not reflect any particular sentence on any particular count, so it really is commingled, if you will. If your client were retried with respect to the actual person named in the indictment, isn't the evidence overwhelming? I understand that with respect to the name that went to the- Well, she would have to be indicted for that. I understand. With respect to the evidence-with respect to the name that went to the jury, there does seem to be some dispute about whether actual transportation occurred as opposed to just taking the person across the border. But, I mean, are you really seeking a retrial as to the right person? And if so, what is that? I mean, I understand you're here to knock out a wrongful conviction on a count. I'm trying to figure out what's really at stake here. Well, what's at stake, I think, is that the sentence was not really properly allocated, described by the district court so that we know what each count received. There were minimum mandatories involved in these offenses, and the judge never mentioned the minimum mandatory. That was what I was asking, because as I read the sentence, and I know it's not the issue of your appeal. As I read the sentence, I think it would have been precisely the same with or without count nine. It most likely would have been, but that's just me guessing on that particular issue. But I think as far as the retrying question, I think if you look at the Howard v. Daggett case, the judge in that case even said, well, if they hadn't named just two women for this interstate travel to promote prostitution, they could have convicted based on any of the other ones that were presented at trial. What's your authority for your argument that the name must be in the indictment? Well, unfortunately, I don't have cases cited here, but there are numerous cases, and I know that there was a case, the case of Zalapa at 509 F-310-60, a Ninth Circuit case, where the issue of punishing somebody for a multiplicitous indictment was raised, and the issue of whether you could punish someone for two counts for the same offense. And in this case, I think there is a possibility that you could be punishing her twice for the same person, particularly if you look at the, if you let count eight stand, that means she's been convicted for Mr. Martinez. Could they say alien one, alien two, alien three, as opposed to having a specific name, I guess is the question. I mean, we have Hart's, which says you can name any old gun in the indictment. It doesn't matter as long as you're convicted of some gun, and the evidence shows that. Well, I think Howard B. Daggett also indicates that when you have a lot of evidence, the jury does have to sort out whether they proved what they charged in the indictment. That was essential, not surplusage. In Hart's, the names of the guns were surplusage. Any gun would have done. The jury didn't even have to be unanimous on which gun they thought was used during the crime. So if the indictment had said alien one, alien two, alien three, and the evidence of trial showed three different aliens, wouldn't that be analogous to Hart's? That would be, and that would be analogous to, that would fit within what Daggett was trying to encourage the courts to do or the government to do when they pled these things. But in this case, there was evidence of multiple incidents brought before the jury, a lot of it through hearsay but without objection. And the jury, although there was this one incident that the government focused its pleadings on, there were a lot of other incidents in which Ms. Ponce's transportation cell was implicated. I want to understand your argument here. There's two counts that were sent to the jury on transportation. On one of them, although it was numbered wrong, it was the person in the indictment. Are you challenging that one too? In other words, counts eight and nine were in effect switched in the jury instructions, but one of the people was one of the people named in the indictment, and there's no problem with that one in your view, is there? There's not. That would be a variance that's not prejudicial, but then that would leave the other count. I understand that. You've got about a minute and a half, and I don't know if you want to keep it, but you obviously have other arguments that go broader. I want to give you a chance to make them. Well, I would like to highlight we argued about the government's bringing in the hearsay testimony of the guide, and that issue I think is important because really that was the only evidence to support, arguably support that. Now, is this the one where the comment was made they did everything but offered the person tickets to Disneyland? Yeah. That was a very unfortunate comment for Ms. Ponce's attorney to make. That might have been okay if it was the government counsel saying it because at the time the deposition was taken, he had been on the case for less than a week, and he asked only four questions. So I really think that that statement needs to be set aside. It's only on availability that you're arguing about. Obviously you had an ability to cross-examine. Well, I don't know about the ability, but he did have the opportunity. Opportunity. So it's only on availability, and how can we find that the judge erred on unavailability when defense counsel said, I agree, we've tried everything except. Well, because the government has the burden of showing that they made an effort regardless of whether the defense objects, and that's the law. And the government did not, they had an opportunity to subpoena the standard procedures, to subpoena the witness at the video deposition. In this case, they didn't issue a subpoena, and it has been argued that there was no trial date, but there was a motion hearing date set, and even if there was a trial date, and frequently these trials are continued, so there still is a mechanism for the government to maintain control over that subpoena and jurisdiction over the witness. And in this case, they did make efforts to contact the witness after the video deposition took place. They've had a writ to bring the witness to testify before the grand jury. That all happened before the trial, but it shows that there was an effort. And I think this case, it's a little dangerous to let this witness's testimony stand in this context because by the time the government charged Ms. Ponce, they had already released the material witnesses that we've argued about in the first issue. So there were no live recipient witnesses other than the Border Patrol agents, and I don't think that they made the case that they needed to for the bringing to evidence. All right. Your time's expired. In fact, you're over time. Unless the panel has additional questions, they don't appear to. Thank you. Good morning. Sean Coyle on behalf of the United States. Good morning. Well, I'll take up the two questions that were raised for defense counsel. First, with respect to the question of whether count nine makes any difference, the clerk's record in this case does indicate that the sentence was imposed concurrent as to all counts, and that's the only, not the judgment. Why don't you make our life easier and confess error on count nine and everybody can go on their way? Well, I have confessed that there is an error, but I don't believe that it's a reversible error. And I think that it's still an important question because this Court's law of variance and constructive amendment make it clear that this is not a reversible error. What do we do with Howard v. Daggett? That, Your Honor, let me take a step back and say what I think the line of cases discussing constructive amendment and variance say about those concepts generally, and then I think it will be clear where Howard v. Daggett fits in. Courts concern themselves principally with three policy considerations when they're thinking about constructive amendment and variance. The first is, can we be reasonably sure that the grand jury would have indicted the person for this conduct? The second is, would the defendant have been on notice of the proof that was offered at trial such that they could put on an effective defense? And third, is there sufficient overlap between the charges in the indictment and the proof at trial such that we can be sure that the person's double jeopardy rights are going to be vindicated? And so the way that all of those fit together in the central question that's asked by this Court is, are we talking about the same complex of facts at trial as the facts that are alleged in the indictment? Here, there's no question but that that is the case. The alien who was inadvertently subbed in, if you will, by the jury instructions was named elsewhere in the indictment as being part of the same criminal course of conduct on the same date involving the same co-conspirators. Wasn't the evidence somewhat different as to the, I must admit to some confusion in the names, but let's call the alien in the indictment and the alien in the jury instructions. With respect to one of those, the evidence of transportation at least seems thinner than as to the other. Is that fair? I think that's a fair point, Your Honor, but I actually think that sort of cuts in our favor because the alien who was inadvertently subbed in, Mr. Lopez-Hernandez, was identically situated to Mr. Martinez-Rosas. Those were both aliens who got into the car with the alien transporter. And so the one in the indictment was the one who had hopped out? Is that what you're saying? That's correct. The one who was found separately. So in the jury instructions, you got your stronger case as opposed to your somewhat weaker case? Well, you could make that argument. I would submit that even when a foot guide transports illegal aliens by foot, that that's still transportation. But I think, you know, this wasn't a case where Ms. Ponce, you know, made her stand on this issue. She didn't make her stand on the identity of these aliens. Let's say maybe it's possibly walked over or whatever, or they walked over together or whatever. Now, do you get, when we evaluate the strength of the evidence, do you get all inferences in favor of the verdict? Yes, Your Honor. Okay. It should be viewed in the light most favorable of the government. So on if it's a weaker case, your position is it's really not that weak because? Well, I think we're talking about the alien who was not named in the instructions here. And I think, Your Honor, your point was it sounds like maybe the government has a slightly weaker case for transportation with respect to that alien. And the point I simply made was there still was a very good case with respect to that alien. The foot guide had moved that alien. Because they're all together? They were all together when they crossed the border. They were all together after they'd come across the border. They did get split up at one point. Can they consider all the other evidence in the trial about what Ms. Ponce's operation and all of that? I'm sorry. What was that, Your Honor? Can they consider all the evidence in the trial about her operation? Well, certainly, Your Honor. And the point that I was just making a moment ago is Ms. Ponce didn't dispute any of this. I mean, she didn't dispute that conspirators had transported these aliens, brought these aliens to the United States for the identity of these aliens. Because I understood that the transportation charge, and maybe I'm wrong, it was transportation after crossing, correct? Well, transportation is different than bringing two. Yes. That is correct. And to be honest with you, I'm not familiar with any case that draws that dividing line where those two kinds of conduct come together. Right, but they're distinct concepts. They're just bringing two is different than transportation. It is. Although I would submit that the foot guy, for example, can clearly be guilty of both of those. Sure. And I'm not saying there wasn't sufficient evidence to go to the jury here, but all we really know about the guy named in the indictment, at least as far as I can tell from this record, is that he comes across with everybody else. He doesn't get into the car. He doesn't, although he moves with the group within the United States after crossing. After crossing. And so there may be sufficient evidence on transportation, but it's a little weaker, isn't it? It is. I guess in that regard, Your Honor's point stands that the instructions, in effect, made this a stronger case for the government. Who was Ms. Ponce convicted of transporting in Count 9? Well, it depends on whether you go with the instructions or with the indictment. I know, but what's the government's position? Who was she convicted of? Your Honor, my position is that she was convicted of transporting the alien who was named in the indictment, and that's the way that I took up the issue in my brief. I don't think there's any evidence that the jury relied on the mistake in this jury instruction. She was convicted on a Pinkerton theory. That's a theory that was set forth in the indictment that charged her, and I don't believe there's any evidence that this instruction tripped up the jury or that they in any way relied on it. And so, you know, my position is there wasn't even a variance here. But to the extent that there was, it certainly doesn't come anywhere near Howard v. Dagger. That's a case that implicates all those concerns that courts worry about when they talk about constructive amendment and variance. Because there, in the indictment, the defendant was alleged to have engaged in sex crime conduct with respect to two women. And then the instructions allowed the jury to convict with respect to many other women. But what was most important was that the proof at trial involved other women. And so the effect of that was that the defendant could be convicted of completely different criminal conduct, completely different criminal transactions involving people who were not alleged in the indictment. That implicates the grand jury concern. It implicates the notice to the defendant concern. None of those are an issue here. We know that this alien who may have been inadvertently subbed in, depending on how you look at the way that the instructions impacted the jury's deliberations, that was part of the same exact criminal course of conduct on the same exact date. So you distinguish Daggett as dealing with multiple transactions and just deals with a unified transaction? Exactly. And I think that's the common thread for all of this Court's cases dealing with constructive amendment versus variance. The question is, did the proof at trial enlarge the universe of facts that could be used to convict the defendant? Absolutely not in this case. And none of the policy concerns that underlie this Court's law of constructive amendment versus variance are implicated by the clerical error in these instructions. Judge Acuda, does that answer your question, or do you need follow-up? Yes, it does. Thank you. And with respect to the ‑‑ I'll just take it quickly. With respect to the deposition issue, you know, I made the point in my brief that this is an issue that's been waived by Ms. Ponce-Below. She took it up below and agreed that there was no confrontation clause issue here. But even if you set that aside, this Court's opinion in Matus Zayas absolutely forecloses any finding that would lead to a reversal here. In that case, we have similar facts. There's no showing that the alien was in fact ‑‑ or rather that the foot guy was in fact available to testify at trial. But unlike in that case, in this case the government went further. We did make a proffer regarding the unavailability of the witness. We made every effort to procure this witness in the only way that would have been ethically available to us, and that is by contact with the witness's counsel. The witness's counsel said he was in Mexico, beyond our territorial reach, and that he was unwilling to come back. There's really nothing more that the government could have done under those circumstances. And that's what we proffered to the Court. And there was certainly no opportunity for us to proffer more because Ms. Ponce, in this case, agreed that it was absolutely sufficient. I think that Matus Zayas forecloses any finding of reversible error in this case. With that, unless the panel has any questions, I will submit. Do either of you have any additional questions? All right. Then this matter will stand submitted. Thank you both for your argument in this matter.
judges: Callahan, Ikuta, Hurwitz